

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

RAWFORD C. MARTIN
ATTORNEY GENERAL

May 5, 1970

Hon. Martin D. Eichelberger
District Attorney
McLennan County Courthouse
Waco, Texas

Dear Mr. Eichelberger:

Opinion No. M- 624

Re: Disposition of the $1.00
service charge collected
by county tax assessor-
collectors as authorized
by Article 6675a-11,
Vernon's Civil Statutes.

By recent letter you have requested an opinion from
this office in regard to the above stated matter. Accompanying
your request, you enclosed a letter from your county auditor,
and we quote from the auditor's letter as follows:

"There is some disagreement between the County
Auditor and the County Tax Assessor and Collector
regarding the proper handling and accounting for a
$1.00 service charge now provided for the handling
and mailing of automibile license plates in McLennan
County.

"The Tax Assessor-Collector has been collecting
the service charge as provided in Article 6675a-11
but has not been reporting such collections to the
County Clerk and discharging himself from the
accountability by delivering such funds to the
County Treasurer and receiving therefor the County
Treasurer's receipt. Instead, the Tax Assessor-
Collector has been paying these moneys directly
to the Postmaster for postage to the extent of
the postage incurred in the mailing of automobile
license plates, with the unused balance of collec-
tions being retained by the Tax Assessor-Collector
for disposition at some later date."

"1. Is it permissable for the County Tax
Assessor-Collector to spend these funds for postage
by a method which excludes the approval of the
County Auditor and the Commissioners Court as well

-2984-

as the signature of the County Treasurer and the
County Clerk and the counter-signature of the
County Auditor which is normally required on other
payments by the county?

"2.   Is the Tax Assessor-Collector required to
report service charges to the County Clerk and de-
liver the moneys to the County Treasurer for deposit
in the County Treasury?

"3.   If Question One is answered in the affirma-
tive, is it within the scope and authority of the
County Auditor to require that such funds be de-
posited in the County Treasury and warrants be
drawn on the County Treasurer for the payment of
the postage and handling in connection with the
mailing of auto license plates if he deems it
necessary to the proper checking and accounting
of these fees?"

Your question necessitates an analysis of Article 6675a-
11, Vernon's Civil Statutes, which was amended by the Texas Legis-
lature in 1969.

Article 6675a-11 is quoted as follows:

"As compensation for his services under the
provisions of this and other laws relating to the
registration of vehicles, each County Tax Assessor-
Collector shall receive a uniform fee of sixty-five
Cents (65¢) for each of the first five thousand
(5,000) receipts issued by him each year pursuant
to said laws; he shall receive a uniform fee of
Fifty-five cents (55¢) for each of the next ten
thousand (10,000) receipts so issued, and a uniform
fee of Fifty Cents (50¢) for each of the balance of
said receipts so issued during the year.  Said com-
pensation shall be deducted weekly by each County
Tax Assessor-Collector from the gross collection
made pursuant to this Act and other laws relating
to registration of vehicles.  Out of the compensa-
tion so allowed the County Tax Assessors-Collectors,
it is hereby expressly provided and required that
they shall pay the entire expense of issuing all
license receipts and license plates issued pursuant
hereto.  It is further provided that the County Tax
Assessors-Collectors may collect an additional
service charge of One Dollar ($1.00) from each

applicant desiring to register or reregister by
mail. This service charge shall be used to cover
the cost of handling and postage to mail the regis-
tration receipt and insignia to the applicant. The
Highway Department may issue and promulgate procedures
to cover the timely application for and issuance of
registration receipts and insignia by mail." (Em-
phasis added.)

The above quoted Article represents an amendment of
Article 6675a-11 by House Bill 768, Acts of the 61st Legislature,
1969, pages 1657 and 1658.

Section 4 of said House Bill reads as follows:

"The fact that the number of motor vehicle
registrations made by the County Tax Assessors-
Collectors has steadily increased, and the fact
that labor and material costs and other adminis-
trative expenses which are necessary in the is-
suance of such registrations have materially in-
creased, and the fact that there has been no
increase in the fees allowed Tax Assessors-
Collectors for performing this service . . ."
(Emphasis added.)

Section 4 indicates a general intent on the part of the
Legislature to increase the fees of the Tax Assessors and Col-
lectors to meet the ever rising costs of issuing license plates
over the counter or through the mail.

The percentage fee authorized to be collected was in-
creased by this amendment and the Tax Assessors-Collectors were
authorized to collect a $1.00 "service charge" in addition to the
percentage fees to cover costs of mailing the license plates.
The collection of "service charge" appears to be discretionary
with the Tax Assessors-Collectors since the Legislature provided,
"the County Tax Assessors-Collectors may collect an additional
service charge. . . .", however, the use of such money is not
discretionary since the Legislature further provided:

"This service charge shall be used to cover
the cost of handling and postage to mail the regis-
tration receipt . . ." (Emphasis added.)

The mere legislative designation of the $1.00 charge as
a "service charge" rather than a "fee" will not control the de-
termination of the character of the charge. Greer v. Hunt County,

249 S.W. 831, 832 (Comm.App. 1923, opinion adopted by Sup.Ct.), wherein it was said ". . . that merely calling the compensation a salary or calling it commissions is not necessarily controlling."

Fees are defined as "compensation for particular services rendered at irregular periods, payable at the time the services are rendered." See Wichita County v. Robinson, 155 Tex. 1, 276 S.W.2d 509, 513 (1955).

Article 6675a-11, when read as a whole, evidences an intent to provide for an additional service charge by the county tax assessors-collectors " as compensation for his services." This is clearly distinguishable from his salary compensation.

Article XVI, Section 61 of the Constitution of Texas, provides, in part:

"All district officers in the State of Texas and all county officers in counties having a population of twenty thousand (20,000) or more, according to the then last preceding Federal Census, shall be compensated on a salary basis. . .

"All fees earned by district, county, and precinct officers shall be paid into the county treasury where earned for the account of the proper fund. . ."

The purpose of the above constitutional amendment was to abolish the fee system of compensating the officers named and to place them on a salary basis, and consequently as to all officers on a salary basis all types of fees of office other than salary would become payable to the treasury out of which salaries are paid. Wichita County v. Robinson, supra; Banks Administrator v. State of Texas, 362 S.W.2d 154 (Tex.Civ.App. 1962, error ref.). State v. Glass, 170 S.W.2d 470 (Tex.Civ.App. 1943, error ref., 167 S.W.2d 296); Settegast v. Harris County, 159 S.W.2d 543 (Tex.Civ.App. 1942, error ref.).

It is our opinion that the service charge type of fee must be handled in the same manner as the other fees collected by the Tax Assessor-Collector pursuant to Article 6675a-11. Such fees must be deducted weekly and deposited in the proper fund of the county. See Attorney General Opinion No. 0-5453 (1943) dealing with the procedure for handling certificate of title fees.

In our construction of Article 6675a-11, we must give effect to the rule that where a statute is subject to two

constructions, one of which would favor the claim that the charge in question is a fee to be placed in the treasury and the other to the contrary, the former construction must be adopted. Modden v. Hardy, 92 Tex. 613, 50 S.W. 926, 928 (1899); Allen v. Davis, 333 S.W.2d 441, 444 (Tex.Civ.App. 1960, no writ); Eastland County v. Hagel, 288 S.W. 518 (Tex.Civ.App. 1926, error ref.).

In the light of the above discussion and conclusions, we would answer your first question "No", and your second question "Yes", and in light of our answer to your first two questions we believe the third question to be moot.

## S U M M A R Y

Article 6675a-11 as amended in 1969 authorizes an increase in fees for the Tax Assessor-Collector including a $1.00 service charge for handling mail-in orders. Such fees including the $1.00 fee must be weekly deducted from the gross sales and accounted for as a fee of office and deposited in the proper county fund, and the expenses incurred paid as are the other expenses of the county.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by James C. McCoy
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Acting Co-Chairman
David Longoria
Bill Craig

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant